FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 MAR 25 PM 2:25

U.S. DISTRICT COURT
N.D. OF ALABAMA

ERICSSON GE MOBILE )
COMMUNICATIONS, INC., a )
corporation, )
 )
    Plaintiff, )
 )
 ) CIVIL ACTION NO.   CRo
v. )
 ) 94-AR-0808-S
MOTOROLA COMMUNICATIONS & )
ELECTRONICS, INC., a )
corporation, and )
THE CITY OF BIRMINGHAM, )
ALABAMA, a municipal )
corporation, )
 )
    Defendants. )
 )
 )
 )

ENTERED

MAR 2 5 1998

**MEMORANDUM OPINION**

This court has for consideration an appeal by plaintiff, Ericsson GE Mobile Communications, Inc. ("EGE") of the clerk's taxation of costs against it in the aggregate sum of $24,283.41. Defendant, City of Birmingham ("City"), claimed costs of $20,103.47, and defendant, Motorola Communications & Electronics, Inc. ("Motorola"), claimed costs of $10,765.88. Instead, the clerk assessed EGE $14,518.78 for a sizeable portion of the costs incurred by City and $9,764.63 for a sizeable portion of the costs incurred by Motorola. EGE now seeks to reduce the City's award for the cost of depositions by $6,780.00 and to reduce Motorola's award

223

for depositions by $4,816.905. The present controversy, then, is over which, if any, of defendants' costs should be paid by plaintiff. It centers on the countervailing influences of 28 U.S.C. §§ 1919-20 ("§ 1919" and "§ 1920"), and of Rule 54(d)(1), F.R.Civ.P. Required reading for understanding what this court will conclude hereinafter is *Ericsson GE Mobile v. Motorola Communications*, 120 F.3d 216 (11th Cir. 1997), and *Ericsson GE Mobile v. Motorola Communications*, 657 So. 2d 857 (Ala. 1955).

### The Question to be Decided

It is impossible to ascertain from the clerk's record whether defendants suggested to the clerk, as they do to this court, that § 1919 justifies or requires the taxation against plaintiff of <u>all</u> of the costs incurred by defendants in defense of this suit. As noted above, the clerk taxed against plaintiff, EGE, less than all of the costs claimed by defendants. Section 1919, however, does not authorize the <u>clerk</u> to take <u>any action whatsoever with respect to costs</u>. Rather, that section authorizes only the taxation of costs by the <u>court itself</u> under one specified circumstance. It reads as follows:

> § 1919.   <u>Dismissal for lack of jurisdiction</u>
>
> <u>Whenever any action or suit is dismissed in any district court</u>, the Court of International Trade, or the Court of Federal Claims, <u>for want of jurisdiction</u>, such <u>court</u> may order the payment of <u>just costs</u>.

28 U.S.C. § 1919 (emphasis supplied).

City and Motorola argue that, because the Eleventh Circuit

2

ultimately vacated this court's judgment entered in favor of EGE and remanded the case with the instruction for this court to dismiss EGE's action for lack of jurisdiction, <u>all</u> litigation costs incurred by defendants automatically became "just costs" to be taxed against EGE. Obviously, this contention is somewhat inconsistent with defendants' own failure to appeal from the clerk's taxation of less than all of the costs claimed in their bills of costs.

The clerk's purported taxation here was necessarily pursuant to § 1920 which allows certain costs to be taxed either by the court <u>or</u> by the clerk. That statute provides:

> § 1920. <u>Taxation of costs</u>.
>
> A <u>judge or clerk</u> of any court of the United States <u>may</u> tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920 (emphasis supplied).

Rule 54(d)(1) provides in pertinent part:

> **Costs Other than Attorneys' Fees.** <u>Except when express provision therefor is made</u> either <u>in a statute of the United States</u> or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party <u>unless the court otherwise directs</u>; but costs against the United States, its officers, and

3

>agencies shall be imposed only to the extent permitted by law. Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

(emphasis supplied). "Express provision" by statute for taxation of costs upon a dismissal for lack of jurisdiction is made in § 1919.

EGE objects to the costs assessed by the clerk as if defendants' claims for costs were properly ruled upon by the clerk pursuant to § 1920. EGE makes an understandable, if erroneous, assumption, inasmuch as the clerk could not have assessed costs pursuant to § 1919. Strangely, defendants do not ask this court to vacate the clerk's action. The court, nevertheless, agrees with defendants that § 1919 is the applicable statute here and that § 1919 elbows aside both § 1920 and Rule 54(d)(1). Section 1919, on the one hand, and § 1920 and Rule 54(d)(1) on the other, are mutually exclusive, although § 1920 and Rule 54(d)(1) may provide some help in determining under § 1919 what costs are "just."

Why is § 1919 controlling? Simply because this case was dismissed for lack of jurisdiction. Section 1919 was expressly and specifically designed to cover such a situation. This leaves only one question to be decided: What, if any, are defendants' "just costs" to be taxed by the court against EGE in this highly unique case?

The word "justice" is an elongation of the word "just." "Justice" and "fairness" have a close kinship. Thus, the sole

question before the court in this case can be restated simply as "What is fair here?" In convoluted fashion, the question can be framed as "Would 'justice' be served by taxing all of two defendants' very sizeable litigation costs against a plaintiff simply because the trial court was found never to have had jurisdiction in the first place, even though plaintiff won a pyrrhic victory on the merits, and even though the ultimate, appellate-ordered dismissal was necessarily 'without prejudice' so that plaintiff can still file suit in a court of competent jurisdiction, where all parties would be able to use all of the discovery materials obtained during their abortive expedition through federal court, including an interlocutory trip to the Supreme Court of Alabama for answers to important certified questions?"

Arguably, a relevant consideration in deciding what constitute "just costs" here is the Eleventh Circuit panel's concession that the position it took in wiping out this court's claim to jurisdiction is contrary to the law of other circuits and to the positions taken by the two leading commentators on federal procedure, namely, Professor Wright and Professor Moore. The Eleventh Circuit frankly said:

> See 14A Charles A. Wright, et al., *Federal Practice and Procedure*, § 3703 at 66-68 (1985) ("[The either-viewpoint rule] seems to be the desirable rule, since the purpose of a jurisdictional amount requirement--to keep trivial cases away from the court--is satisfied when the case is worth a large sum to either party."); 15 James W. Moore, *Moore's Federal Practice*, § 102.109[4]

5

> at 199 (1997) ("[T]he jurisdictional-amount requirement reflects a congressional judgment that federal judicial resources should be devoted only to those diversity cases in which the financial stakes rise to a predetermined level. It is difficult to understand why those financial stakes are not implicated when *either* party stands to gain or lose the statutorily determined amount or its equivalent.")

*Ericsson GE Mobile,* 120 F.3d at 220 n.15 (emphasis in original). The Eleventh Circuit also pointed out that the question that it was finding to have been erroneously decided by this court was decided just as erroneously by other district courts within the Eleventh Circuit, as they and this court understood *Duderwicz v. Sweetwater Sav. Ass'n*, 599 F.2d 1008 (5th Cir. 1979), the last case decided by a binding court with respect to the meaning of 28 U.S.C. § 1332, the statute that sets out the requisites for diversity jurisdiction. The *Duderwicz* court held:

> [T]he value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover, but by the pecuniary consequence to those involved in the litigation.

*Id.* at 1014. However, in the instant action, the Eleventh Circuit panel said, "We remain bound to follow the plaintiff-viewpoint role regardless of the wisdom we attach to it." It is only <u>now</u> unequivocally the law of the Eleventh Circuit that the jurisdictional amount in diversity cases is to be ascertained strictly and exclusively from the viewpoint of the plaintiff. Consequently, if a diverse plaintiff cannot recover of a defendant at least $75,000 (today's jurisdictional amount) or its equivalent value, federal jurisdiction does not exist, even though the

6

"subject matter" in controversy, as it was here, is in the millions of dollars.

If this court had taken seriously defendants' initial cursory challenge of this court's jurisdiction pursuant to § 1332, it would have written an opinion on the subject. That opinion would have read something like this:

### Memorandum Opinion on the Jurisdictional Question

Plaintiff has premised jurisdiction on 28 U.S.C. § 1332, which reads in pertinent part as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where <u>the matter in controversy</u> exceeds the sum or value of $50,000, exclusive of interest and costs, and is between --
>
> (1) citizens of different States;

28 U.S.C. § 1332 (emphasis supplied). Defendants correctly point out that plaintiff cannot recover any money or thing of value from them, much less $50,000. Plaintiff seeks only a declaration that a purported contract between the defendants is void and an injunction against the implementation of that purported contract. Although the value of the contract is in the millions of dollars, plaintiff, by obtaining the relief it seeks, could only <u>hope</u> that it will get the contract with the City of Birmingham, a highly speculative possibility. This court not only reads the old Fifth Circuit cases predating the formation of the Eleventh Circuit as interpreting the words "the matter in controversy" more broadly and fairly than "the sum that can be recovered by plaintiff," but it subscribes to the position taken on the subject both by Professor Wright and by Professor Moore, namely, that the "<u>either</u>-viewpoint" rule represents the proper interpretation of § 1332.

The courts which have limited § 1332 to cases in which a plaintiff can obtain the jurisdiction amount have ignored obvious legislative history and the rules of statutory construction. The hoary predecessor to § 1332 was § 41(1) (Judicial Code, section 24). Before 1940, that statute read, in pertinent part, as follows:

> <u>The district courts shall have original jurisdiction as follows</u>:

>    (1) United States as plaintiff; <u>civil suits</u> at common law <u>or in equity</u>.
>       First. Of all suits of a civil nature, at common law <u>or in equity</u>, brought by the United States, or by any officer thereof authorized by law to sue, or between citizens of the same State claiming lands under grants from different States; or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) <u>is [sic] between citizens of different States</u>, or citizens of the District of Columbia, the Territory of Hawaii, or Alaska, and any State or Territory, or (c) is between citizens of a State and foreign States, citizens, or subjects.

28 U.S.C. § 41(1)(1932).

   In 1940, when Congress first enacted § 1332, it simply substituted the words "all civil actions" for the words "all suits of a civil nature, at common law <u>or in equity</u>." (emphasis supplied). This change was made to make the statute consistent with the newly adopted Rule 2, F.R.Civ.P., which did away formally with the already fast-evaporating distinction between law and equity. Congress could not and did not intend to eliminate federal diversity jurisdiction over suits in equity over which federal courts had long previously had jurisdiction. What would be the consensus of legal opinion as to what is the predominant <u>equitable</u> remedy? The clear answer is "the injunction." Whether proscriptive or mandatory, the injunctive remedy does not provide the "complainant" with money. Rather, it deprives the "respondent" of something that it intended to do, or makes it do something that it doesn't want to do. In other words, it provides the kind of remedy requested in the instant case by EGE. Declaratory judgments are creatures of statute. They came into being in 1934 with the enactment of the Declaratory Judgment Act (48 Stats. 455, Chapter 512) (predecessor to 28 U.S.C. § 2201), which did not describe the new remedy as "equitable" or "legal." This legislative history explains why Professor Wright and Professor Moore are correct when they agree with this court that the City's and Motorola's "plaintiff-viewpoint" interpretation of § 1332 is flawed. If federal courts before 1940 would have had diversity jurisdiction over EGE's suit, what could have been the Congressional rationale for dramatic tightening of access in diversity cases?

   The sequence of legislative events is not all that stands in the way of defendants' argument. The primary, if not the only, Congressional rationale for providing diversity jurisdiction to a federal court is to give a non-resident litigant like EGE some protection in controversies involving significant monetary value

8

from the preferential treatment likely to be given a powerful resident litigant in its state forum. This is a very good reason why, in this case, EGE brought its action in this court rather than in the court in the Alabama county in which the defendant City is located. This is why Congress chose the broad phrase "matter in controversy."

There is at least one other reason why the City and Motorola are wrong in their interpretation of § 1332. That reason arises by necessary implication from *Advance Tank & Const. Co., Inc. v. Arab Water Works*, 910 F.2d 761 (11th Cir. 1990), a decision in which this very court was being reviewed in a case involving Alabama's competitive bid law. There was one important difference between *Advance Tank* and the instant case. In *Advance Tank*, the plaintiff invoked the jurisdiction of this court under both 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1331 (federal question). The Eleventh Circuit said:

> Advance Tank brought suit in the United States District Court for the Northern District of Alabama, seeking <u>damages</u> under 42 U.S.C. § 1983, and <u>injunctive relief</u> under the Alabama Competitive Bid Law ...

910 F.2d at 763 (emphasis supplied).

\*   \*   \*

> The district court dismissed the section 1983 claim for damages under Federal Rule of Civil Procedure 41(b) at the close of plaintiff's case-in-chief.

910 F.2d at 763 n.2.

The federal question in *Advance Tank* was presented by the alleged violation of 42 U.S.C. § 1983. After this court granted judgment in favor of defendant on the § 1983 claim, the only jurisdictional basis remaining was § 1332. At that point *Advance Tank* became in all material respects just like the instant case. And yet, on appeal, the Eleventh Circuit did not order the dismissal of the case for lack of jurisdiction despite the universal rule that, when subject matter jurisdiction is lacking, the only recourse is dismissal. As pointed out in *Moore's Federal Practice*, § 12:30 (3d ed.):

> Lack of subject matter jurisdiction may be raised at any time. Indeed, even if the litigants do not identify a potential problem in that respect, it is the duty of the court--<u>at any level of the proceedings</u>--to address the issue sua sponte

9

>           whenever it is perceived.  Although other defenses and
>           objections are waived if not asserted in an initial Rule 12
>           motion or any responsive pleading, <u>lack of subject matter
>           jurisdiction challenges the court's statutory or
>           constitutional power to adjudicate the case, and it cannot be
>           waived</u>.

(emphasis supplied).

>      If the Eleventh Circuit had subscribed to the interpretation
> here placed on § 1332 by City and Motorola, it would have ordered
> the dismissal of the *Advance Tank* action and would not have dealt
> with the merits of the controversy.  The implication is clear.
> Because the plaintiff, Advance Tank, ultimately only sought
> injunctive relief under § 1332, both this court and the Eleventh
> Circuit implicitly concluded that the "matter in controversy"
> exceeded the value necessary to establish diversity jurisdiction.
> Therefore, in keeping with the foregoing, defendants' contention
> that this court is without diversity jurisdiction is not well taken.

Thinking it unnecessary at the time, this court did not write the above opinion.  This court has learned the hard way that it is impossible to get an escaped horse back in the barn.  Whether the above opinion would have kept the gate shut on the horse is anybody's guess.[1]

## Conclusion

In the instant action, plaintiff proceeded to a favorable final judgment after a finding of jurisdiction by the trial court.

---

[1] An interesting side question is: "What is the effect of this court's lack of jurisdiction on the opinion of the Supreme Court of Alabama obtained by certification of questions of Alabama law?"  If this court lacked jurisdiction, could it certify anything to an Alabama court?  After all, the jurisdiction of the Alabama court is derivative of the jurisdiction of this court and could hardly be invoked by this court if this court lacked jurisdiction.  The expressions of the Supreme Court of Alabama in this case may, as a jurisprudential matter, be mere *dicta*.

Then, in language that virtually begged plaintiff to petition for certiorari to the Supreme Court of the United States, the appellate court set aside that favorable trial result. In the court's view, this is not a circumstance that cries out for the imposition on plaintiff of sizeable costs of defense, many of them unnecessary under any thoughtful § 1920 analysis. The applicable principles under a § 1919 analysis are well expressed by the Eastern District of Wisconsin in *Edward W. Gillen Company v. Hartford Underwriters Insurance Company*, 166 F.R.D. 25 (E.D. Wis. 1996), as follows:

> [U]nlike costs awarded under Rule 54, costs awarded under 28 U.S.C. § 1919 are not subject to a presumption that they shall be awarded to a prevailing party. Rather, this Court's authority to even consider the awarding of costs in cases dismissed for want of jurisdiction is rooted in Section 1919 for the common law forbade any such award by courts. *Signorile v. Quaker Oats Company*, 499 F.2d 142 (7th Cir 1974) (citing *McIver v. Wattles*, 22 U.S. (9 Wheat.) 650, 6 L.Ed. 182 (1824)). Under the common law, "where the court has no jurisdiction, it has no power to do anything but strike the case from its docket, the matter being coram non judice." *Johns-Manville Corp. v. United States*, 893 F.2d 324, 327 (FE Cir. 1989) (citing *The Mayor v. Cooper*, 73 U.S. (6 Wall) 247, 250-51, 18 L.Ed. 851 (1868)).
>
> The parties erroneously assert this case is controlled by Rule 54. Rather, it is governed by 28 U.S.C. § 1919. As Section 1919 governs this Court's analysis, the issue before this Court is whether the awarding of costs as required by the defendants is just.

*Id.* at 27-28.

Although in *Manor Healthcare Corp. v. Lomelo*, 729 F.2d 633 (11th Cir. 1991), the Eleventh Circuit was dealing with the taxation of costs under Rule 54 and not under § 1919, its recognition of broad discretion in the trial court encourages this court to exercise its discretion as to what are "just costs" under

11

the totality of circumstances in the instant case by giving the benefit of the doubt to EGE. It is undisputed that EGE's claims, both as to jurisdiction and as to merits, were far from frivolous. In *Manor Healthcare*, the Eleventh Circuit said:

> This court will not disturb an award of costs unless a clear abuse of discretion is demonstrated. (citation omitted). Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but whether the premise upon which the district court exercised its discretion was correct.

929 F.2d at 639.

Plaintiff was correct to complain of defendants' gilt-edged discovery, much of which was unproductive and unnecessary. The court does not know what it would have done if EGE had challenged the taxation of any costs whatsoever against it, but, because EGE concedes that it should pay certain of defendants' costs, the court will ignore minor disputes over witness fees and, by simple arithmetic, will reduce the costs as taxed by the clerk to that level of defendants' deposition cost conceded by EGE. While City and Motorola are thanking EGE for its concession made under the erroneous assumption that § 1920 controls, EGE should profusely thank City and Motorola for pointing out that § 1919 controls. It was City and Motorola who put this blind hog's nose on the acorn.

Based on the foregoing, the court hereby finds that the costs, as reduced in accordance with EGE's arguments for the disallowance of certain deposition costs, namely, $7,738.78 in favor of the City and $4,949.68 in favor of Motorola, constitute the "just costs" to

be taxed in this case against plaintiff.  A separate appropriate order will be entered.

DONE this 25th day of March, 1998.

*/s/ William M. Acker*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE